No. 24,536.

A. N. GLANCY, *Appellant*, v. THE HAVEN MILL COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

REAL-ESTATE AGENT—*Commissions—Immaterial Misrepresentations As to Title*. Plaintiff's claim to a real-estate dealer's commission on an exchange of real properties was resisted because the agent represented that the property to be received by defendant, his principal, was subject to a mortgage for $14,500 due in two years, when in fact it was subject to three mortgages aggregating $14,500, two of which were first mortgages on different parts of the property and due in slightly more than two years, and the third, a junior mortgage covering all the property, was due in about 14 months. *Held*, that such misrepresentations were not of sufficient consequence to defeat plaintiff's right to a commission.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed June 9, 1923. Reversed.

*C. M. Williams*, and *D. C. Martindell*, both of Hutchinson, for the appellant.

*F. L. Martin*, and *Walter F. Jones*, both of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for a real-estate dealer's commission on the sale and barter of defendant's milling property.

Defendant listed the property with plaintiff for sale or trade at a valuation of $31,500. Plaintiff produced a buyer, F. M. Secrest, the owner of a Montgomery county farm valued at $45,000 subject to mortgages aggregating $14,500, who was willing to trade his farm for the defendant's mill; and defendant and Secrest entered into a written contract to exchange the mill for the mortgaged farm. This contract, dated January 22, 1921, in part, provided:

"The said described land to be conveyed [by Secrest] by good and sufficient warranty deed to be accepted and conveyed at a valuation of $30,500, in addition to a mortgage of $14,500 which shall be assumed by grantees. [defendant.]                              "THE HAVEN MILL COMPANY,
                                        "By GEO. D. MERRITT, *President*,
                                  "F. M. SECREST,
                                        "By JAMES LANE."

The plaintiff's commission not being paid for this service, he brought this action, alleging the foregoing facts.

Defendant's answer admitted the employment of plaintiff, admitted that he produced Secrest as a prospective customer, and that

defendant had entered into negotiations with Secrest and Secrest's agent, James Lane, but that they fraudulently represented that the mortgage on the farm was held by a life insurance company, that the mortgage was for $14,500 drawing interest at 6 per cent and not due for two years, and that defendant contracted with Secrest in reliance thereon. In an amended answer, defendant also pleaded that plaintiff had made the same misrepresentation touching the mortgage, and that the defendant believed and relied upon all the representations and particularly the representations of the plaintiff, all of which were false and untrue. It was also alleged that there was no loan of $14,500 from a life insurance company, but that there were in fact several mortgages upon the land, and that Secrest was not ready, willing and able to make an exchange of property as provided in the contract at the time of the execution thereof, and that Secrest had never been ready, willing and able to make the agreed exchange of property.

Other matters pleaded will need no attention.

On the issues joined, the evidence showed that instead of the land being subject "to a mortgage of $14,500" as specified in the contract, there were three mortgages against the property which aggregated $14,500. Of these, one first mortgage for $5,000, bearing 6 per cent interest, and due in 24 months, 21 days, covered part of the farm and was held by the Waddell Investment Company as mortgagee. Another first mortgage, which covered the remainder of the land, was for $3,600 bearing 6 per cent interest, and due in about 25 months, 9 days, was held by Lillie F. Agnew as mortgagee. The third of these mortgages was a junior lien on the whole farm for $5,900, bearing 7 per cent, and due in 13 months, 12 days, and was held by George H. Bunting as mortgagee.

On behalf of defendant, a managing officer of the company testified—

"When Mr. Glancy first came down to the store with Mr. Jones he told me there was a mortgage on this land running 24 months at 6 per cent. It was at a director's meeting in the city of Haven that we told him to go ahead and see if he could make the deal. I told him at the store if his statements were true we were ready to make the deal. . . . Mr. Secrest made the board of directors there a formal proposition that he would trade us this land subject to a mortgage of $14,500 . . . we entered into this contract."

The deal was apparently called off on account of the state of the mortgage indebtedness. The same witness testified:

"Mr. Glancy asked me the question, if I was going through with the deal.

I said, 'Hell, no.' He said 'Why?' I says, 'You misrepresented the title and lied to me about the title.' I says the title should show 24 months for that loan, we ought to have 24 months to pay for it, and it only shows 14 months, and it should only show 6 per cent and it is carrying 7 per cent, and he says, 'Why we will pay you the 1 per cent to take care of that', and I said, 'What will take care of the ten months?' and he said, 'Men of yours and Mr. Merritt's standing will not have any trouble about getting it renewed. I told him that a life insurance company, that was their business to loan money, it would be much easier to extend it with a life insurance company than with an individual." [three separate mortgages.]

The jury returned a verdict for defendant, and answered special questions:

"Q. 1. Did the plaintiff make any false representations as to any fact in connection with the trade entered into between F. M. Secrest and 'defendant that were material as explained by the court in its instructions that caused defendant to enter into said contract? A. Yes.

"Q. 2. If you answer the above interrogatory in the affirmative, then you may state what said representations consisted of. A. That there were three mortgages instead of one, two being first mortgages on separate tracts and one a second mortgage covering the whole tract, not according to representation.

"Q. 3. If you answer the first interrogatory in the affirmative that the plaintiff did make false representations that were material to defendant for the purpose of inducing them to enter into said contract, then did the said defendant rely upon said false representation? A. Yes."

Plaintiff appeals, assigning various errors which all center on the one question whether the misrepresentation touching the incumbrances on the Secrest farm was material.

It will be noted that the written contract did not particularize as to the date when the indebtedness on the farm matured. It will also be noted that the inaccuracy touching the date of maturity was slight. The representation was 24 months. One of the first mortgages was due in 24 months, 21 days; the other in 25 months, 9 days. The junior incumbrance was due in 13 months, 12 days. This court is of one mind that the slight inaccuracy or misrepresentation as to the time the mortgage indebtedness had to run was immaterial. As to the fact that the indebtedness was secured by three mortgages held by different mortgagees instead of one mortgage held by one mortgagee, an insurance company, as represented by plaintiff, we do not have the same unanimity of opinion, but a majority of the court holds that this, too, was not of sufficient consequence to defeat the plaintiff's right to his commission.

Neither was the fact that part of the indebtedness bore 7 per cent

of sufficient gravity to defeat the plaintiff altogether. He offered to pay or rebate the difference between 6 per cent and 7 per cent on the junior mortgage,—about $65.85. That item can be considered by the trial court in determining the amount due him. Touching the case as a whole, all the facts are already determined and a new trial would serve no purpose (Civ. Code, § 581), so the judgment is reversed and the cause remanded with instructions to enter judgment for plaintiff.